UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANE M. ALLESI,                                    16-CV-555-LJV-MJR

                    Plaintiff,                      REPORT AND RECOMMENDATION

            -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                    Defendant.
_____

        This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo

pursuant to 28 U.S.C. §636(b)(1) for the preparation of a report and recommendation on

dispositive motions.  (Dkt. No. 7).

        Plaintiff Diane M. Allesi brings this action pursuant to 42 U.S.C. §405(g) seeking

judicial review of the final decision of the Commissioner of Social Security denying her

Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the

"Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  For the following reasons, it is recommended that

Allesi's motion (Dkt. No. 6) be granted, the Commissioner's motion (Dkt. No. 8) be denied,

and this matter be remanded to the Commissioner for further administrative proceedings

consistent with this Report and Recommendation.

---

[1]      The previously named defendant, Carolyn W. Colvin, is no longer serving as the Acting
Commissioner of Social Security.  The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND

I.    *Procedural History*

On January 22, 2013, Allesi filed her DIB application alleging disability since August 31, 2010 due to lupus, Raynaud's disease, lung disease, arthritis, osteoporosis, connective tissue disease, osteoarthritis, emphysema, and spondylosis.  (*See* Tr. 51-53, 111-12).[2]  Allesi later amended her onset date to August 1, 2011.  (Tr. 36).  Allesi previously worked as an accountant, loan coordinator, and customer service representative, but she has not engaged in substantial gainful activity since her amended onset date.  (Tr. 20, 37-38).  Allesi's DIB application was denied on April 22, 2013 (Tr. 51, 64-71), after which she requested a hearing before an Administrative Law Judge (Tr. 72-73).  On August 19, 2014, Allesi, represented by counsel, appeared before Administrative Law Judge Grenville W. Harrop, Jr. (the "ALJ") for a hearing.  (Tr. 34-50).  On November 25, 2014, the ALJ issued his decision denying Allesi's DIB claim.  (Tr. 15-31).  Allesi requested review by the Appeals Council (Tr. 32-33), but on May 18, 2016, the Appeals Council denied Allesi's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7).  This action followed.

II.    *Summary of the Evidence*

A.    *Medical Evidence*

The Court will briefly summarize the medical evidence in the record.

Allesi visited rheumatologist Dr. Mark Schulte for treatment between June 2011 and May 2013.  Dr. Schulte noted at the initial appointment that Allesi had been diagnosed with lupus in the mid-1980's after developing Raynaud's disease and marked fatigue.

---

[2]    References to "Tr." are to the administrative record in this case.

Allesi complained of achy joint pain in her hands with occasional joint swelling and stiffness as well as fatigue that limited her ability to work more than two days a week. Accordingly to Dr. Schulte, Allesi has what appears to be mixed connective tissue disease,[3] and she "displays features of both an inflammatory polyarthritis and limited scleroderma (Raynaud's phenomenon, GERD, and telangiectasias)."[4] (Tr. 281-82). At a follow-up visit with Dr. Schulte in September 2011, Allesi reported doing well since her last visit, although she continued to have "achy pain" at the base of her thumbs. Dr. Schulte assessed mixed connective tissue disease (improved), Raynaud's disease (unchanged), and osteoporosis (unchanged). (Tr. 275-76). Allesi's condition remained "essentially unchanged" at appointments in January 2012, May 2012, September 2012, and January 2013. (Tr. 264-71). At the January 2013 appointment, Allesi received lidocaine injections in her hands. (Tr. 264-65).

In November 2012, Allesi visited her primary care physician, Dr. James Collier, to ask about "permanent disability." Dr. Collier noted that Allesi suffers from severe lumbar spine pain, right sciatica, lumbar disc disease, severe lupus, mixed connective tissue disease, severe chronic obstructive pulmonary disease, peripheral vascular disease, gastritis, hyperlipidemia, hypertension, and moderate restrictive lung disease with superimposed small airway dysfunction. (Tr. 292). Allesi continued to visit Dr. Collier every month or so through June 2014 for mixed connective tissue disease, back pain,

---

[3]    "Mixed connective tissue disease is a syndrome with overlapping clinical features of systemic lupus erythematosus, scleroderma, polymyositis, and Raynaud's phenomenon." *Minsky v. Apfel*, 65 F. Supp. 2d 124, 127 (E.D.N.Y. 1999).

[4]    Scleroderma refers to thickening and induration of the skin. Stedman's Medical Dictionary (28th ed. 2006). Polymyositis is the "[i]nflammation of a number of voluntary muscles simultaneously." *Id.* Telangiectasia refers to dilated blood vessels. *Id.*

and anxiety, among other issues.   Dr. Collier prescribed Hydrocodone and Xanax to help treat her symptoms.  (Tr. 291, 340-49, 367-68, 419-27).

In January 2013, Allesi visited Dr. Gregory Castiglia regarding significant pain across the middle of her back with occasional numbness and tingling down her right leg. Dr. Castiglia noted that Allesi had lumbar disc surgery approximately eleven years before the appointment.  Lumbar spine x-rays performed in December 2012 revealed evidence of osteoporotic changes and compression fractures at T11 and T12 consistent with Allesi's chronic back pain.  Dr. Castiglia recommended Voltaren Gel to relieve Allesi's back pain and physical therapy to strengthen her core muscles.  (Tr. 284-86).  Allesi attended physical therapy in February and March 2013 before switching to a home exercise program.  (Tr. 319-21).

On March 15, 2013, Allesi visited Dr. Janine Ippolito for a psychiatric evaluation in connection with her DIB claim.   Dr. Ippolito rendered the following medical source statement:

> The claimant presents as able to follow and understand simple directions and instructions.  She can perform simple tasks independently.   She can maintain attention and concentration.  She is able to maintain a regular schedule and learn new tasks.   She can perform complex tasks independently.   She can make appropriate decisions and relate adequately with others.  She can appropriately deal with stress with mild difficulty.  These difficulties are caused by her current emotional distress.   The results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

(Tr. 304-08).

Also on March 15, 2013, Allesi visited Dr. Donna Miller for an internal medicine examination in connection with her DIB claim.  Dr. Miller rendered the following medical source statement:

> The claimant has moderate limitation with repetitive activity given her mixed connective tissue disorder.  The claimant also should avoid dust, irritants, and tobacco exposure which may exacerbate pulmonary issues.

(Tr. 309-13).

On March 21, 2013, State agency psychological consultant Dr. J. Echevarria reviewed the available medical evidence of record and opined that Allesi's psychiatric impairments are "non-severe."  (Tr. 56-57).

In May 2013, Allesi returned to Dr. Schulte complaining of back pain, achy pain in her hands, and declining grip strength.  Dr. Schulte again administered lidocaine injections to Allesi's hands.  (Tr. 352-53).

Allesi visited Dr. Castiglia for a follow-up appointment in September 2013.  Dr. Castiglia reviewed x-rays and performed a physical examination before diagnosing osteoporosis, acute T8 compression fracture, and chronic thoracic and lower back pain. Dr. Castiglia recommended that Allesi be fitted for a back brace and continue her pain medication regimen with her primary care physician.  (Tr. 363-64).

In October 2013, Allesi began treating at Buffalo Rheumatology North after Dr. Schulte stopped accepting her health insurance.   (Tr. 345).   At her initial appointment with Nurse Practitioner Claudia Moulden, Allesi complained of morning stiffness, joint swelling and pain, weakness in her hands, Raynaud's disease, tingling in her feet and legs, and depression and anxiety, among other things.  Nurse Moulden assessed connective tissue disease diffuse unspecified.  (Tr. 389-91).  At an appointment with Dr.

Linda Burns at Buffalo Rheumatology North in November 2013, Dr. Burns remarked that Allesi was "doing well" with regard to her mixed connective tissue disease.  (Tr. 328-32).

At an appointment with Dr. Castiglia in April 2014, Allesi reported that her thoracic spine was feeling much better, though she had some lower back pain from her back brace.  Based on his review of thoracic and lumbar spine x-rays, Dr. Castiglia concluded that Allesi's T8 compression fracture had healed and that she did not have any new compression fractures.  (Tr. 369-70).

In May 2014, Allesi visited Nurse Moulden complaining of "[p]ain all over," particularly in her legs.  Nurse Moulden assessed connective tissue disease unclassified, osteoporosis unspecified, and long term medication use.  (Tr. 409-13).  At a follow-up visit with Dr. Burns the next month, Allesi reported back pain and intermittent numbness and tingling in her right foot.   Dr. Burns continued to assess connective tissue disease unclassified, osteoporosis unspecified, and long term medication use.  (Tr. 402-07).  On August 19, 2014, the same day as the ALJ hearing, Dr. Burns wrote a letter indicating that Allesi has arthritis in her hands, difficulty with grip strength and fine motor skills on a sustained basis, and pain occurring on an "unpredictable basis" due to her Raynaud's disease.  (Tr. 428).

### B. *Administrative Hearing Testimony*

Born in 1953, Allesi was sixty-one-years old on the day of the hearing.  (Tr. 36).  She previously worked as an accountant for two years, a loan coordinator for two-and-a-half years, and a customer service representative for about eight years, but she stopped working due to issues with her hands, back pain, and lack of energy.  (Tr. 37-39).  Allesi also briefly worked as a cashier at Target two days a week in 2011, but she stopped

working there because she could not meet the physical requirements of the position. (Tr. 43-44). Allesi's activities now include cooking, cleaning, laundry, grocery shopping, and reading at least a couple hours a day. (Tr. 40-41). She does not go out socially, and she stopped attending church due to car problems. (Tr. 41).

Allesi testified that she can sit comfortably for about thirty minutes, stand for ten minutes, walk five minutes, and lift and carry up to five pounds. (Tr. 41-42). She has swelling in her feet and hands, hardly any grip strength, and suffers from fatigue. (Tr. 42, 45). She cannot use a keyboard for more than five to ten minutes at a time. (Tr. 45). She also has difficulty concentrating, and she does not socialize because of her anxiety and depression. (Tr. 45-46).

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   _The ALJ's Decision_

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Allesi has not engaged in substantial gainful activity since August 1, 2011, her amended onset date. (Tr. 20). At step two, the ALJ concluded that Allesi has the following severe impairments: "a history of lupus, mixed connective tissue disease, Raynaud's disease, arthritis, osteoporosis, status post remote history of lumbar spine surgery with spondylosis, thoracic spine compression fractures, coronary artery disease, hypertension, hyperlipidemia, and obstructive airways disease." (_Id._). At step three, the ALJ found that Allesi does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 22). Before proceeding to step four, the ALJ assessed Allesi's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[5] (a moderate limitation for repetitive activity). She should avoid dust, irritants, and tobacco exposure. She is able to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, maintain a schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress.

(Tr. 23). Proceeding to step four, and relying on the testimony of a vocational expert, the ALJ found that Allesi can perform her past relevant work as an accounting clerk, customer-service clerk, and loan clerk. (Tr. 27). Accordingly, without reaching the fifth step, the ALJ concluded that Allesi has not been under a disability within the meaning of

---

[5]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

the Act from her amended August 1, 2011 onset date through the date of the ALJ's decision. (*Id.*).

IV.    *Allesi's Challenges*

Allesi principally argues that the ALJ's RFC assessment — in particular, his finding that Allesi has "a moderate limitation for repetitive activity" — is impermissibly vague.[6] The Court agrees.

The ALJ's finding that Allesi has "a moderate limitation for repetitive activity" comes from Dr. Miller, who opined that Allesi "has moderate limitation with repetitive activity given her mixed connective tissue disorder." (Tr. 312-13). However, neither Dr. Miller nor the ALJ list *which* activities Allesi is moderately limited in — for example, standing, walking, sitting, lifting, carrying, reaching, handling, fingering, or some other activity. The ALJ and Dr. Miller likewise fail to explain what a "moderate" limitation entails, rendering the term vague. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding consulting physician's opinion that plaintiff had a "moderate" impairment in lifting and carrying to be "so vague as to render it useless in evaluating whether [the plaintiff] can perform sedentary work"). As Allesi points out in her motion papers, "a moderate limitation for repetitive activity" could be construed to mean that she is limited in her ability to handle, finger, and reach. This interpretation is certainly plausibly in light of the medical evidence that Allesi has arthritis in her hands, difficulty with grip strength and fine motor skills on a sustained basis, and pain occurring on an "unpredictable basis" due to her Raynaud's disease. (Tr. 428). Assuming *arguendo* that Allesi can only occasionally handle, finger,

---

[6]    Allesi advances alternative arguments in support of remand (*see* Dkt. No. 6-1 (Plaintiff's Memo. of Law)), but the Court need not address these arguments because the case should be remanded due to the Commissioner's failure to properly assess Allesi's RFC.

and reach, then she would not (as the ALJ concluded in his decision) be able to perform her past work as an accounting clerk, customer-service clerk, or loan clerk, as all three of these positions require frequent handling, fingering, and reaching.  (Tr. 48-50, 219-37).[7]

The ALJ also erred in interpreting Dr. Miller's opinion to mean that Allesi can perform sedentary work.  (Tr. 26).   In order to perform sedentary work, a claimant must be able to perform a certain amount of lifting, carrying, sitting, walking, and standing.  20 C.F.R. §404.1567(a).  Dr. Miller's opinion does specifically address to what extent Allesi can perform these activities; rather, it merely states that she "has moderate limitation" with regard to unspecified "repetitive activit[ies]."  Similarly, the ALJ erred in concluding that an RFC of sedentary work accounts for any manipulative limitations Allesi might have.  (Tr. 26).  The Commissioner's definition of sedentary work does not address manipulative limitations.  20 C.F.R. §404.1567(a).  Thus, rather than conclude that sedentary work accounts for Allesi's manipulative limitations, the ALJ should have specifically listed those limitations in his RFC assessment.

For these reasons, this case should be remanded to the ALJ to re-evaluate Allesi's RFC, and, if necessary, request that Dr. Miller explain what she meant by a "moderate limitation with repetitive activity."

## CONCLUSION

For the foregoing reasons, it is recommended that Allesi's motion for judgment on the pleadings (Dkt. No. 6) be granted, the Commissioner's motion for judgment on the

---

[7]    *Drennen v. Astrue*, No. 10-CV-6007MAT, 2012 WL 42496 (W.D.N.Y. Jan. 9, 2012), a case relied upon by the Commissioner in her Memorandum of Law (Dkt. No. 8-1 at 16), is inapposite.  Although the consultative examiner in *Drennen* opined that the plaintiff has "moderate limitations in sustained physical activities," the ALJ in *Drennen* (unlike the ALJ in the instant case) did not copy this vague language into his RFC assessment.  *Id.* at *2, 5.

pleadings (Dkt. No. 8) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

- 14 -

Dated:      May 14, 2018
            Buffalo, New York

                                    /s/ Michael J. Roemer
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge